UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
THE NATIONAL PENSION PLAN OF
THE UNITE HERE WORKS PENSION
FUND, et. al.,

                 Plaintiffs,             05 Civ. 6138 (RPP)

                                              **OPINION AND ORDER**

       - against -

WESTCHESTER LACE & TEXTILES, INC.,
WESTCHESTER NARROW FABRICS, INC.,
L&G MANAGEMENT CO., EASTCHESTER
LACE & TEXTILES, LTD., and John Does
1-10,

                 Defendants.
-----------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

      On June 30, 2005, the National Pension Plan ("National Plan") of the UNITE

HERE Workers Pension Fund ("Fund"), an employee benefits plan, and Trustees of the

Fund (collectively, "Plaintiffs"), brought a complaint against Westchester Lace &

Textiles ("Westchester Lace"), Westchester Narrow Fabrics, Inc., L&G Management,

CO., S&E Management, Co., Eastchester Lace & Textiles Ltd., and John Does 1-10

(collectively, "Defendants") to collect withdrawal liability, liquidated damages, interest,

attorneys' fees, and costs.  Pl. Complaint ¶ 1.  On January 11, 2006, Plaintiffs filed a

motion for summary judgment.  Pl. Mem. for Summary Judgment.  On January 20, 2006,

Defendants filed a memorandum of law in opposition to Plaintiffs' motion for summary

judgment, and filed a motion to vacate the arbitration decision which held that the

Defendants' request for arbitration was not timely.  Def. Mem. in Opp. to Summary

Judgment; Def. Br. in Support of Mot. to Vacate. Plaintiffs' motion for summary judgment is granted and Defendants' motion to vacate the arbitration award is denied.

## I. BACKGROUND

The following facts are taken from Plaintiffs' Local Civil Rule 56.1 Statement, and have not been disputed by Defendants by the filing of a document with a correspondingly numbered paragraph responding to each numbered paragraph of Plaintiffs' 56.1 Statement as required by Local Civil Rule 56.1.

**The Parties**

1. The Fund is a Taft-Hartley trust fund with trustees equally represented by labor organizations affiliated with UNITE HERE (the "Union") and employers that contribute to the Fund.

2. The Fund is established and maintained pursuant to Section 302(c)(5) of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 186(c)(5).

3. The Board of Trustees of the Fund is the plan sponsor of the National Plan, an employee pension benefit plan within the meaning of Sections 3(2) and (3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1002(2) and (3), and a defined benefit plan within the meaning of Section (3)(35) of ERISA, 29 U.S.C. § 1002(35), established and maintained for the purpose of providing retirement and related benefits to eligible participants and beneficiaries.

4. The National Plan is a multiemployer plan within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37).

5. The Trustees of the Fund are fiduciaries of the National Plan within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

6. Westchester Lace is an employer within the meaning of Sections 3(5), (11), and (12) of ERISA, 29 U.S.C. §§ 1002(5), (11), and (12), and Section 301(a) of the LMRA, 29 U.S.C. § 185(a). Westchester Lace has its principal place of business at 3901 Liberty Avenue, North Bergen, New Jersey, 07047.

7. Westchester Lace is 100% owned by Leonard Edelson.

8. Westchester Lace, Westchester Narrow, L&G, S&E, and Eastchester are all related entities.

9. Westchester Narrow is located at 135 Maple Avenue, Milton, Pennsylvania and is 100% owned by Leonard Edelson.

10. L&G is located at 3901 Liberty Avenue, North Bergen, New Jersey, 07047 and is an affiliate of Westchester Lace. Leonard Edelson is the sole owner of L&G. L&G holds title to the real estate at which Westchester Lace operates and rents space to Westchester Lace.

11. S&E is located in Milton, Pennsylvania and is owned by Leonard Edelson. S&E holds title to the real estate at which Westchester Narrow operates, and rents space to Westchester Narrow.

12. Eastchester is located in Jiangmen, Guangdong Province, China, and is owned by Leonard Edelson.

**Westchester Lace's Participation in and Withdrawal From the Fund**

13. Westchester Lace participated in and contributed to the Fund's National Plan pursuant to the terms of a series of collective bargaining agreements between Westchester Lace and the Union.

14. Participating employers in the National Plan, including Westchester Lace, are

bound by the terms of the National Plan and the Trust Agreement.

15. Beginning on or about October 1995 until January 2005, Westchester Lace was obligated to contribute to the National Plan for its participating employees pursuant to a series of collective bargaining agreements between Westchester Lace and the Union.

16. Westchester Lace last made contributions to the National Plan for December 2004.

17. On February 10, 2005, Westchester Lace sent the Fund a letter instructing the Fund to "remove all employees from Westchester Lace's Textiles' Pension Plan." See Feb. 10, 2005 letter, Rust Aff. Ex. C.

18. Based on this information, and on the cessation of Westchester Lace's contributions, the Fund determined that Westchester Lace completely withdrew from the National Plan in January 2005.

19. By letter dated February 15, 2005, the Fund sent to Westchester Lace a request for information about Westchester Lace, including information about its financial condition and corporate structure, and demanded a response within thirty days pursuant to Section 4219(a) of ERISA, 29 U.S.C. § 1399(a). See Feb. 15, 2005 letter, Rust Aff. Ex. D.

20. The Fund routinely sends such requests for information to employers that have withdrawn so that the Fund can fulfill its fiduciary obligations to collect withdrawal liability.

21. By letter dated February 28, 2005, the Fund notified Westchester Lace that the Fund determined that Westchester Lace had completely withdrawn from the Fund, and demanded payment of withdrawal liability in the estimated amount of $485,521.00

pursuant to a quarterly payment schedule.  Feb. 28, 2005 letter, McMurdy Cert. Ex. B.

22. Westchester Lace did not provide the Fund with information requested in the Fund's February 15, 2005 letter within thirty days.

23. Despite numerous demands by the Fund and Fund counsel in the weeks following the February 15 and 28 letters, Westchester Lace maintained that it did not have to provide the Fund with any of the requested information.

24. In or about April 2005, the Fund's actuary completed the National Plan's actuarial valuation for the plan year ending September 30, 2004, and was able to calculate Westchester Lace's final withdrawal liability amount.

25. By letter dated April 21, 2005, the Fund notified Westchester Lace that its final withdrawal liability amount equals $410,867.00, and demanded payment in quarterly installments, with the first installment payment of $13,703.00 due by May 15, 2005.  See Apr. 21, 2005 letter, McMurdy Cert. Ex. D.

**Westchester Lace's Default and the Fund's Acceleration of its Withdrawal Liability**

26. Westchester Lace failed to pay the Fund its first quarterly installment of $13,703.00 on or before May 15, 2005.

27. By letter dated May 18, 2005, the Fund notified Westchester Lace that it failed to remit its first quarterly installment payment due on May 15, 2005, and demanded payment within sixty days.

28. The Fund Manager learned from a local Union representative that the National Labor Relations Board had ordered Westchester Lace to make whole certain former employees for losses suffered due to Westchester Lace's unfair labor practices.  The local Union representative estimated that the amount of backpay owed to these employees was

approximately $1.2 million.

29. The Fund Manager learned that Westchester Lace's owner, Leonard Edelson, was trying to sell the building in which Westchester Lace operated.

30. Based on this information, Westchester Lace's refusal to provide the Fund with the information it requested in the Fund's February 15, 2005 letter, and Westchester Lace's failure to pay its first withdrawal liability payment on a timely basis, the Fund Manager determined on July 7, 2005 that Westchester Lace lacked creditworthiness and demonstrated a substantial likelihood that it would be unable to pay its withdrawal liability, declared Westchester Lace in default, and accelerated its withdrawal liability payments pursuant to the terms of the National Plan and ERISA.

31. Section 19.5 of the National Plan provides that the Fund Manager may declare an employer in default of its withdrawal liability, inter alia, upon a determination that the employer demonstrates a substantial likelihood it will be unable to pay its withdrawal liability.

32. On June 8, 2005, the counsel for the Fund sent counsel for Westchester Lace a letter, notifying Westchester Lace that the Fund had accelerated Westchester Lace's withdrawal liability pursuant to Section 4219(c)(5) of ERISA and Section 19.5 of the National Plan due to its determination that Westchester Lace demonstrated a substantial likelihood it would be unable to pay its withdrawal liability. The Fund demanded full and immediate payment of Westchester Lace's outstanding withdrawal liability of $410,867.00 no later than June 13, 2006. See June 8, 2005 letter, Jan. 11, 2006 Spivack Aff. Ex. J.

33. Westchester Lace failed to pay the full accelerated amount demanded by the

Fund by June 13, 2005. Instead, Westchester Lace paid only $13,703.00 to the Fund.

34. Westchester Lace refused to provide any of the requested information until June 13, 2005, 118 days following the Fund's original request, and only after the Fund accelerated Westchester Lace's withdrawal liability.

35. On June 13, 2005, Westchester Lace provided counsel for the Fund an incomplete response to the Fund's February 15, 2005 request for information. Westchester Lace, <u>inter alia</u>, failed to provide information regarding the value of its assets and liabilities. <u>See</u> <u>id</u>.

36. By letter dated June 13, 2005, counsel to the Fund acknowledged receipt of the $13,703.00 payment and the partial response to the Fund's information request, noted deficiencies in Westchester Lace's response to the Fund's request for information, and demanded Westchester Lace provide information about its assets and liabilities by June 15, 2005. <u>See</u> June 13, 2005 letter, Jan. 11, 2006 Spivack Aff. Ex. K.

37. Westchester Lace failed to provide this information by June 15, 2005, and has not provided this information to date.

38. The Fund commenced the instant action on June 30, 2005.

**Westchester Lace's Demand for Arbitration**

39. On June 23, 2005, Westchester Lace initiated arbitration with the American Arbitration Association to challenge the Fund's assessment of withdrawal liability and the Fund's decision to accelerate the withdrawal liability. <u>See</u> McMurdy Cert. Ex. H.

40. The Fund asserted that the arbitration was untimely.

41. The parties held a pre-arbitration conference on August 31, 2005, at which the parties agreed that the Arbitrator would first determine whether or not the arbitration was

timely.

42. After the parties fully briefed the timeliness issue, the Arbitrator issued an Opinion and Award dated December 23, 2005, ruling that Westchester Lace failed to commence its arbitration within the time limits set forth in ERISA. <u>See</u> Jan. 11, 2006 Spivack Aff. Ex. L.

**Interest, Liquidated Damages, Attorneys' Fees and Costs**

43. Section 4.4 of the Trust Agreement provides that the Fund shall be entitled to collect interest at the rate of 1 % per month, liquidated damages equal to 20% of the amount owed, plus attorneys' fees and costs of an action to collect amounts due to the Fund, including withdrawal liability.

## II. DISCUSSION

### A. Motion to Vacate Arbitration Award

On January 20, 2006, Defendants filed a timely motion to vacate the December 23, 2005 arbitration decision and award of the arbitrator, which determined that Westchester Lace had failed to initiate a demand for arbitration within the time limits set forth in ERISA. <u>See</u> ERISA § 4221(b)(2), [29 U.S.C. § 1401(b)(2)].

*1. Standard of Review*

In ERISA arbitrations, the Court should review all conclusions of law <u>de novo</u>, and must presume as correct all the arbitrator's findings of facts. 29 U.S.C. § 1401(c); <u>Tr. of Amalgamated Ins. Fund v Geltman Indus., Inc.</u>, 784 F.2d 926, 929 (9th Cir. 1986), <u>cert. den.</u> 479 US 822 (1986). Statutory interpretation is a question of law subject to <u>de novo</u> review. <u>Id</u>. Mixed questions of law and fact are reviewed for clear error. <u>Cent. States, Se. & Sw. Areas Pension Fund v. Nitehawk Express, Inc.</u>, 223 F.3d 483, 488 (7th

Cir. 2000). "A finding is clearly erroneous if the reviewing court, after acknowledging that the factfinder below was closer to the relevant evidence, is firmly convinced that the factfinder erred." Id. at 488-489.

*2. Applicable Law*

ERISA § 4202, [29 USCS § 1382], provides, in pertinent part:

> When an employer withdraws from a multiemployer plan, the plan sponsor . . . shall—
>> (1) determine the amount of the employer's withdrawal liability,
>> (2) notify the employer of the amount of the withdrawal liability, and
>> (3) collect the amount of the withdrawal liability from the employer.

ERISA requires that disputes regarding withdrawal liability be resolved through arbitration. ERISA § 4221, [29 U.S.C. § 1401]. Section 4221(a)(1) provides as follows:

> (1) Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 4201 through 4219 [29 USCS §§ 1381-1399] shall be resolved through arbitration. Either party may initiate the arbitration proceeding within a 60-day period after the earlier of—
>> (A) the date of notification to the employer under section 4219(b)(2)(B) [29 USCS § 1399(b)(2)(B)], or
>> (B) 120 days after the date of the employer's request under section 4219(b)(2)(A) [29 USCS § 1399(b)(2)(A)].
> The parties may jointly initiate arbitration within the 180-day period after the date of the plan sponsor's demand under section 4219(b)(1) [29 USCS § 1399(b)(1)].

ERISA § 4221(a)(1), [29 U.S.C. § 1401(a)(1)].

ERISA § 4219, [29 U.S.C. § 1399], covers procedures to be followed upon an employer's withdrawal from the plan, and provides as follows, in pertinent part:

> (a) Furnishing of information by employer to plan sponsor. An employer shall, within 30 days after a written request from the plan sponsor, furnish such information as the plan sponsor reasonably determines to be necessary to enable the plan sponsor to comply with the requirements of this part.
> (b) Notification, demand for payment, and review upon complete or partial withdrawal by employer.
>> (1) As soon as practicable after an employer's complete or partial withdrawal, the plan sponsor shall—

    (A) notify the employer of—
      (i) the amount of the liability, and
      (ii) the schedule for liability payments, and
    (B) demand payment in accordance with the schedule.
   (2) (A) <u>No later than 90 days after the employer receives the notice</u> described
    in paragraph (1), the employer—
      (i) may ask the plan sponsor to review any specific matter relating to
      the determination of the employer's liability and the schedule of
      payments,
      (ii) may identify any inaccuracy in the determination of the amount of
      the unfunded vested benefits allocable to the employer, and
      (iii) may furnish any additional relevant information to the plan
      sponsor.
    (B) After a reasonable review of any matter raised, the plan sponsor shall
    notify the employer of—
      (i) the plan sponsor's decision,
      (ii) the basis for the decision, and
      (iii) the reason for any change in the determination of the employer's
      liability or schedule of liability payments.

<u>Id</u>. (emphasis added).

   Failure to demand arbitration timely results in a waiver of arbitration, in which

case "the amounts demanded by the plan sponsor . . . shall be due and owing on the

schedule set forth by the plan sponsor." <u>Bowers v. Compania Peruana de Vapores, S.A.</u>,

689 F. Supp. 215, 219 (S.D.N.Y. 1988)(internal quotation marks omitted); <u>see also</u>

<u>Bowers v. Greenpoint Warehousing & Distribution Servs., Inc.</u>, No. 91 Civ. 3784, 1992

U.S. Dist. LEXIS 6599, at *4 (S.D.N.Y. 1992)("Failure to initiate arbitration within the

statutory time period operates as a waiver of arbitration, thereby fixing the withdrawal

liability and foreclosing any challenge to its imposition.")(citing <u>ILGWU Nat'l Ret. Fund</u>

<u>v. Levy Bros. Frocks, Inc.</u>, 846 F.2d 879, 881-82, 887 (2d Cir. 1988)); <u>Rao v. Prest</u>

<u>Metals</u>, 149 F.Supp.2d 1, 11 (E.D.N.Y. 2001)(Employer "waived its right to challenge

the assessment of withdrawal liability" by failing "to request arbitration in a timely

fashion").

*3. Discussion*

In his opinion of December 23, 2005, the arbitrator, Stanley Aiges, stated that "the sole issue before me (at this time) is whether Westchester Lace's demand for arbitration was timely filed." Aug. 31, 2005 Arbitration Op. at 8. He found that "Westchester Lace did not formally initiate a demand for arbitration with the American Arbitration Association until June 23, 2005,"[1] a demand which, "to be timely, had to have been filed a full three weeks earlier." Id. at 16.[2]

Defendants do not contest the arbitrator's determination of when the 90-day period under ERISA § 4219(b)(2)(A) ended, but contend that the decision of the arbitrator was wrong because Westchester Lace's demand for arbitration satisfied the time limit provisions of ERISA § 4221(a)(1)(B), [29 U.S.C. § 1401(a)(1)(B)], since its correspondence with Plaintiffs, it argues, complied with the provisions of ERISA § 4219(b)(2)(A), [29 U.S.C. § 1399(b)(2)(A)], the text of which is provided supra, at 10. Def. Br. in Support of Mot. to Vacate at 6-7.

Defendants rely on letters of counsel sent to the Fund on March 14, 2005, April 25, 2005, and May 10, 2005, McMurdy Cert., Exs. C, E, and F, to support their argument that Westchester Lace complied with the requirements of ERISA § 4219(b)(2)(A)(i), (ii), or (iii) within 90 days of the Fund's February 28, 2005 notice of Westchester Lace's

---

[1] Defendants acknowledge that Westchester Lace demanded arbitration on June 23, 2005. Def. Br. in Support of Mot. to Vacate at 6. According to the American Arbitration Association's Multi-employer Pension Plan Arbitration Rules for Withdrawal Liability Disputes, arbitration is initiated when "(i) the initiating party gives notice to the other party of its intention to arbitrate (Demand) . . ., and (ii) files at any Regional Office of the AAA two (2) copies of said notice, together with the appropriate administrative fee as provided in the Administrative Fee Schedule." Id. at § 7(a), available at http://www.adr.org/sp.asp?id=22108 (emphasis added).

[2] It is undisputed that the Fund sent Westchester Lace a notice of withdrawal liability and initial calculation of its amount on February 28, 2005. Feb. 28, 2005 Letter, McMurdy Cert. Ex. B. The arbitrator therefore noted that the 90-day period ended on May 31, 2005. Aug. 31, 2005 Arbitration Op. at 10.

withdrawal liability and initial calculation of its amount.

In its March 14, 2005 letter, counsel for Westchester Lace requested "all documentation used to calculate the withdrawal liability," as well as other information and documents to verify the accuracy or authenticity of the Fund's claim, and advised the Fund that upon receipt of this information Westchester Lace would "evaluate the appropriateness of any future action, including, but not limited to, a possible request for arbitration."  March 14, 2005 Letter, McMurdy Cert. Ex. C.  Neither this request for information nor the suggestion of possible arbitration falls within the strictures of the three subdivisions of ERISA § 4219(b)(2)(A), with which an employer is required to comply within 90 days.  See Evans v. Frito-Lay, Inc., No. C83-2237, 1983 U.S. Dist. LEXIS 14065, at *5-7 (D. Ohio 1983) (a request for information does not meet the requirements of 29 U.S.C. § 1399(b)(2)(A)).  Accordingly the letter of March 14, 2005 does not constitute grounds for vacating the arbitration decision.

In its April 25, 2005 letter, counsel for Westchester Lace acknowledged receipt of the general information it had requested from the Fund[3] and stated that:

> [p]ursuant to Section 4221(a) of the Employee Retirement Income Security Act, Westchester Lace requests arbitration with respect to the alleged withdrawal liability.  To the extent that the Fund is unable to provide us with documentation substantiating the calculation of the withdrawal liability, we dispute the actuarial assumptions and calculations and anticipate the submission of an alternative calculation.

Apr. 25, 2005 Letter, McMurdy Cert., Ex. E.[4]  Neither this request for arbitration nor the general statement disputing the withdrawal liability calculation complies with subdivision

---

[3] By letter dated April 20, 2005, the Fund provided Westchester Lace a response to the March 14, 2005 letter enclosing plan documents of the National Pension Plan, the Fund's Forms 5500 for the years 2002 and 2003, and the Fund's actuarial valuations for the plan years ending in 2002 and 2003, as per Section 4221(e) of ERISA.  Apr. 20, 2005 Letter, Feb. 6, 2006 Spivack Aff. Ex. A).  By letter dated April 21, 2005, the Fund advised Westchester Lace that the National Plan Valuation for the plan year 2004 had been completed and that Westchester Lace's withdrawal liability was $410, 867.00.  April 21, 2005 Letter, McMurdy Cert. Ex. D.  The computations were attached.  Id.

(i), (ii), or (iii) of ERISA § 4219(b)(2)(A). ERISA § 4221 requires a party to "initiate the arbitration proceeding," which requires notice of its intention to arbitrate and a filing at the regional office of the AAA. See, supra, n. 1. A statement that a withdrawal liability calculation is in dispute does not constitute a request to the plan sponsor to "review any specific matter relating to the determination of the employer's liability," § 4219(b)(2)(A)(i), nor does it "identify any inaccuracy in the determination of the amount of the unfunded vested benefits," § 4219(b)(2)(A)(ii), nor is it a furnishing of "additional relevant information to the plan sponsor," § 4219(b)(2)(A)(iii). See ERISA § 4219(b)(2)(A), [29 U.S.C. § 1399(b)(2)(A)]. Accordingly the letter of April 25, 2005 does not constitute grounds for vacating the arbitration decision.

In its May 10, 2005 letter, counsel for Westchester Lace again denied the Fund's May 5, 2005 request for information regarding the financial condition, status, and make-up of Westchester Lace; requested a copy of the 1997 and 1998 actuarial evaluations of benefits that accrued prior to September 30, 1997; and requested "arbitration of the determination of the plan that the requested information is reasonable and necessary pursuant to Section 4221 of ERISA." May 10, 2005 Letter, McMurdy Cert., Ex. F. That letter states, in pertinent part:

> Insofar as our own actuary is in the process of verifying the Fund's withdrawal calculations, he has noted that a vast portion of the unfunded liability seems to be for benefits that accrued prior to September 30, 1997. To verify the nature of the change that apparently took place at that time, we request a copy of the 1997 and 1998 actuarial evaluations from the plan. If you prefer, we can have the actuary contact the plan for that information directly.

Id.

---

[4] The April 25, 2005 letter goes on to deny the Fund's February 15, 2005 request, reiterated on April 20, 2005, for financial information about Westchester Lace.

Defendants argue that the May 10, 2005 letter from Westchester Lace asked to review a specific matter, by "asking to review the determination of liability with respect to benefits accrued prior to September 30, 1997, by reviewing [sic] specific calculations related to the 1997 and 1998 actuarial evaluations." Def. Br. in Support of Mot. to Vacate at 11. While this letter is a request for copies of the 1997 and 1998 actuarial evaluations from the plan which would allow Westchester Lace or its actuary to itself review information from the plan, it does not constitute a request that the plan sponsor "review any specific matter." See ERISA § 4219(b)(2)(A)(i). As explained in connection with Westchester Lace's letters of March 14 and April 25, 2005, neither a request for arbitration nor a request for further information constitutes compliance with subdivisions (i),(ii), or (iii) of ERISA § 4219(b)(2)(A). Accordingly the letter of May 10, 2005 does not constitute grounds for vacating the arbitration decision.

Defendants also argue that Westchester Lace identified an inaccuracy in the liability determination as required by ERISA § 4219(b)(2)(A)(ii), "by asserting that the entire calculation was flawed." Def. Br. in Support of Mot. to Vacate at 12. Though Defendants fail to point to any language from the text of Westchester Lace's letters to show that it clearly identified any inaccuracy, they assert that "taken together, the April 25, 2005 letter and the May 10, 2005 letter clearly indicate to the Fund that Westchester Lace is not only disputing the liability calculation, but that the target of its concerns is the alleged liability associated with the pre-1998 accruals." Def. Br. in Support of Mot. to Vacate at 13. While the letters do state that Westchester Lace "dispute[s] the actuarial assumptions and calculations" (April 25, 2005 letter) and "request[s] … arbitration" (May 10, 2005 letter), neither actually identifies "any inaccuracy in the determination of

the amount of the unfunded vested benefits allocable to the employer" as required by

ERISA § 4219(b)(2)(A)(ii). Merely stating that the employer disagrees with the liability

assessment "does not comply with any of the statutory provisions for contesting liability

and tolling the statute of limitations." I.A.M. Nat. Pension Fund, Plan A, A Benefits v.

Slyman Industries, Inc., No. 87-847, 1988 WL 60342, at *2 (D.D.C. 1988). Indeed,

Defendants acknowledge that "Westchester Lace never provided the Fund with a specific

statement of the basis for disputing the withdrawal liability determination." Def. Br. in

Support of Mot. to Vacate at 10.[5] Accordingly the argument by Westchester Lace does

not constitute grounds for vacating the arbitration decision.

The arbitrator concluded that none of Defendants' letters to the Fund, dated

March 14, 2005, April 25, 2005, and May 10, 2005, met the requirements of ERISA §

4219(b)(2)(A); none "ask[ed] the plan sponsor to review any specific matter relating to

the determination of [its] liability and the schedule of payments;" none "identif[ied] any

---

[5] Defendants also argue that they were not able to "provide[] the Fund with a specific statement of the basis for disputing the withdrawal liability determination . . . because the Fund never provided Westchester Lace with sufficient information to verify the accuracy of the withdrawal liability calculation" as required by ERISA § 4221(e), [29 USC 1401(e)]. Def. Br. in Support of Mot. to Vacate at 10. Defendants further argue that they are entitled to information under ERISA § 4221(e) that they are not receiving. Id. at 12-13. However, as the arbitrator acknowledged, "that right is independent of its right to request a specific review of a Fund determination in a timely manner under Section 4219. My consideration here is restricted to the application of Section 4219." Aug. 31, 2005 Arbitration Op. at 16. Similarly, in reviewing the arbitrator's decision, this Court need not rule on whether Defendants were denied information to which they were entitled under ERISA Section 4221(e). However, it does not appear that Defendants were denied information to which they were entitled under ERISA § 4221(e).
Defendants' only outstanding request was for a copy of the 1997 and 1998 actuarial evaluations from the Plan in order to review the unfunded liability for benefits that accrued prior to September 30, 1997. May 10, 2005 Letter, McMurdy Cert. Ex. F. However, as shown by the letter of April 21, 2005, from Richard Rust, (McMurdy Cert. Ex. D), the withdrawal liability schedule utilized the Fund's Direct Attribution Method (authorized by the PBGC for the employers' vested benefits attributable to service prior to September 30, 1997, Feb. 6, 2006 Spivack Aff. ¶ 8), wherein withdrawal liability is based on the unfunded vested benefits attributed to the employer's employees, and not the Fund as a whole. See Id. ¶ 7; Verne Aff. ¶ 6; ERISA § 4211(c)(4), [29 U.S.C. § 1391(c)(4)]). Since this information was unique to Westchester Lace, the Fund was not required to furnish it. See ERISA § 4221(e). Thus, Westchester Lace was in a position to check these calculations against its own records, Verne Aff. ¶¶ 7-8, and its request for the actuarial evaluations in 1997 and 1998 of the multi-employers' unfunded liability prior to September 30, 1997 was irrelevant to Westchester Lace's withdrawal liability.

inaccuracy in the determination of the amount of the unfunded vested benefits [allocated to it];" and none "furnish[ed] additional relevant information to" the Fund.  ERISA § 4219(b)(2)(A), [29 U.S.C. § 1399(b)(2)(A)]; <u>See</u> Arbitration Op. at 14.  The Defendants have not shown that the arbitrator was clearly erroneous in his determination that Defendants had not complied with the provisions of ERISA 4219(b)(2)(A), and thus had not tolled the statute of limitations with respect to the time within which Defendants could initiate arbitration.

Defendants' motion to vacate the arbitrator's determination is denied.

**B. Summary Judgment**

Plaintiffs assert in their Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment that they are entitled as a matter of law to the full amount of the accelerated withdrawal liability demanded by the Fund, plus interest, liquidated damages, attorneys' fees and costs of this action.

*1. Standard of Review*

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed R. Civ. P. 56(c).

Defendants have not disputed Plaintiffs' statement of facts by providing a correspondingly numbered paragraph responding to each numbered paragraph of Plaintiffs' 56.1 Statement, in compliance with Local Civil Rule 56.1.  Therefore Plaintiffs' statement of facts "will be deemed to be admitted for purposes of the motion." S.D.N.Y. Local Civil Rule 56.1(c).

*2. Applicable Law*

ERISA Section 4219(c)(5), [29 U.S.C. § 1399(c)(5)], states as follows:

> In the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made. For purposes of this section, the term "default" means--
>
> (A) the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure, and
>
> (B) <u>any other event defined in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability</u>.

<u>Id</u>. (emphasis added).

Section 19.5 of the National Plan addresses acceleration of liability, and states as

follows[6]:

> Whenever the Trustees or the Fund Manager have reason to believe that there is a substantial likelihood that a former contributing Employer that has withdrawn from the Fund lacks creditworthiness and may be unable to pay its total withdrawal liability, the Trustees or the Fund Manager shall have the authority to declare said Employer's full withdrawal liability to be immediately due and owing and to further declare said Employer in default of such obligation notwithstanding the pendency of an arbitration proceeding or the Employer's right to demand an arbitration concerning said liability.
>
> In assessing the former contributing Employer's creditworthiness, the Trustees or the Fund Manager may take into account the following:
>
> a) The Employer or a Participant of the Employer's controlled group of corporations, trades or businesses having filed in bankruptcy or made an assignment for the benefit of creditors; or
> b) The Employer having failed to make payment of two or more withdrawal liability installments and having continued in default in these payments ten days or more following the due date of the last such installment; or
> c) The Employer or a Participant of the Employer's controlled group of corporations, trades or businesses having begun to liquidate its major assets; or
> d) The Employer becoming insolvent and unable to make timely payments of its debts to three or more of its major creditors.

---

[6] This is Section 19.5 of the National Pension Plan as amended, effective April 28, 2004.

In the event that the Trustees or the Fund Manager finds that one or more of the above circumstances exist or such other circumstances that indicate a lack of creditworthiness that leads either the Trustees or the Fund Manager to believe that the Employer is, or will be, unable to pay its withdrawal liability, the Trustees or the Fund Manager may declare that there is a substantial likelihood that the Employer will be unable to pay its withdrawal liability within the meaning of ERISA Section 4219(c) and shall thereupon declare a default within the meaning of that Section and shall require immediate payment of the full amount of withdrawal liability, plus interest.

National Plan at § 19.5, Rust Aff. Ex. A.

*3. Withdrawal Liability*

Plaintiffs argue that Defendants must pay the Fund the full, accelerated amount demanded by the Fund. Pl. Mem. for Summary Judgment at 8. Plaintiffs's 56.1 Statement, which is uncontested, shows that the Fund Manager, Mr. Rust, determined Westchester Lace lacked creditworthiness and demonstrated a substantial likelihood that it would be unable to pay its withdrawal liability when 1) the Fund Manager learned that Westchester Lace was liable for approximately $1.2 million in employee backpay; 2) Westchester Lace's owner was allegedly trying to liquidate assets (i.e. the building in which Westchester Lace operated); 3) Westchester Lace refused to provide the financial information requested by the Fund pursuant to ERISA § 4219(a); and 4) Westchester Lace failed to make its first withdrawal liability installment payment on time. Pl. Mem. for Summary Judgment at 9; See Pl. 56.1 Statement ¶¶ 28-30; Rust Aff. ¶¶ 22-24.

Defendants ask the Court to determine that the Fund Manager's determination that Westchester Lace was in default was unreasonable because the Fund determined a default occurred even while interim payments were being made and cite the Pension Benefit Guarantee Corporation's regulations as follows:

> declaring a default, and thus requiring immediate payment of withdrawal liability
> plus interest is a very serious remedy which ought not to be invoked while an
> employer is exercising its statutory right to contest the plan's determination.

Def. Mem. in Opp. to Summary Judgment at 4 (citing 49 Fed. Reg. 22622, 22643 (1984).

The undisputed facts are that the Plaintiffs declared a default on June 8, 2005, after Defendants had refused to comply with written requests for financial information, and, contrary to Defendants' claim, after Defendants had failed to make their first interim payment.  See Pl. 56.1 Statement ¶¶ 26, 32-33.

Though Defendants seek a determination from this Court that the Fund Manager's determination to require immediate payment pursuant to ERISA § 4219(c)(5) was unreasonable, ERISA provides that disputes over withdrawal liability be resolved through arbitration.  Section 4221(a)(1) of ERISA, [29 U.S.C. § 1401(a)(1)], requires that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 4201 through 4219 [29 USCS §§ 1381-1399] shall be resolved through arbitration."  Id.  By failing to timely initiate arbitration according to ERISA's provisions, Defendants waived their right to arbitrate the withdrawal liability assessment.  See Bowers v. Compania Peruana., supra, 689 F. Supp. at 219; Bowers v. Greenpoint Warehousing, supra, 1992 U.S. Dist. LEXIS 6599, at *4; Rao v. Prest Metals, supra, 149 F.Supp.2d at 11.

Furthermore, even if the demand for arbitration had been timely, based on Westchester Lace's arguments to this Court, no reasonable arbitrator would have found by a "preponderance of the evidence" that the Fund Manager's determination to declare Westchester Lace in default and accelerate its withdrawal liability payments was "unreasonable or clearly erroneous."  See ERISA 4221(a)(3)(A), [29 U.S.C. §

1401(a)(3)(A)]("For purposes of any proceeding under this section, any determination made by a plan sponsor under sections 4201 through 4219 and section 4225 [29 USCS §§ 1381-1399 and 1405] is presumed correct unless the party contesting the determination shows by a preponderance of the evidence that the determination was unreasonable or clearly erroneous.")

The National Plan gives the Fund Manager and the Board of Trustees broad authority to determine employers' creditworthiness and to accelerate liability. See National Plan at § 19.5, Rust Aff. Ex. A. Defendants incorrectly assert that the Fund Manager must consider only the first four factors listed in the National Plan § 19.5 when assessing an employer's creditworthiness. Def. Mem. in Opp. to Summary Judgment at 4-5. Section 19.5 does not restrict the Fund Manager as Defendants suggest but also states that the Fund Manager may consider "one or more of the above circumstances . . . or such other circumstances that indicate a lack of creditworthiness." National Plan at § 19.5, Rust Aff. Ex. A (emphasis added).

Under the terms of the National Plan, the Fund Manager may require immediate payment of the full amount of withdrawal liability, plus interest if he finds that "there is a substantial likelihood that a former contributing Employer that has withdrawn from the Fund lacks creditworthiness and may be unable to pay its total withdrawal liability." National Plan at § 19.5, Rust Aff. Ex. A. It is the Fund Manager and the Trustees who make this determination and bear a presumption of correctness. Based on the Defendants' arguments to the Court, the arbitrator would not have found "by a preponderance of the evidence that [the Fund Manager's] determination was unreasonable or clearly erroneous," ERISA 4221(a)(3)(A), in view of Westchester Lace's

repeated refusals to provide the Fund with information regarding its assets and liabilities as requested pursuant to ERISA § 4219(a) in the Fund's February 15, 2005 letter, and repeated requests thereafter due to Westchester Lace's failure to make the first interim payment of $13,703, and the information the Fund was receiving regarding the amount of Westchester Lace's NLRB liability and the report that Westchester Lace's owner was attempting to sell the building in which it operated. See Feb.15, 2005 Letter, Rust Aff., Ex. D; Pl. 56.1 Statement ¶¶ 28-29.

*4. Joint and Several Liability*

Plaintiffs assert that Westchester Lace, Westchester Narrow, L&G, S&E, and Eastchester consist of a control group and as such are each jointly and severally liable for the amounts demanded by the Fund. Pl. Mem. for Summary Judgment at 12.

Under ERISA, "businesses under common control are treated as a single employer and are jointly and severally liable for such payment in the event of withdrawal." Cent. States Se. & Sw. Areas Pension Fund v. Chatham Props., 929 F.2d 260, 262-264 (6th Cir. 1991)(citing 29 U.S.C. § 1301(b)(1))(noting that "House and Senate Reports indicate that the primary purpose of this common control provision is to ensure that employers will not circumvent their ERISA and MPPAA obligations by operating through separate entities."); See also Local 478 Trucking & Allied Indus. Pension Fund v. Jayne, 778 F. Supp. 1289, 1303 (D.N.J. 1991).

ERISA Section 4001(b)(1), [29 U.S.C. § 1301(b)(1)], states:

An individual who owns the entire interest in an unincorporated trade or business is treated as his own employer, and a partnership is treated as the employer of each partner who is an employee within the meaning of section 401(c)(1) of the Internal Revenue Code of 1986 [26 USCS § 401(c)(1)]. For purposes of this title, under regulations prescribed by the corporation, all employees of trades or businesses (whether or not incorporated) which are under common control shall

be treated as employed by a single employer and all such trades and businesses as a single employer. The regulations prescribed under the preceding sentence shall be consistent and coextensive with regulations prescribed for similar purposes by the Secretary of the Treasury under section 414(c) of the Internal Revenue Code of 1986 [26 USCS § 414(c)].

29 U.S.C. § 1301(b)(1).

Defendants do not dispute Plaintiffs' 56.1 Statement, according to which Leonard Edelson is the sole owner and shareholder of Westchester Lace (Edelson Cert. ¶ 1; Pl. 56.1 Statement ¶ 7), and also owns Westchester Narrow, L&G, S&E, and Eastchester. Pl. 56.1 Statement ¶¶ 9-12.  These entities are under "common control" for the purposes of ERISA (see 29 U.S.C. § 1301(b)(1)) and are therefore jointly and severally liable for the withdrawal liability owed by Westchester Lace.

*5. Interest, Liquidated Damages, Fees, and Costs*

It is undisputed that the outstanding amount of Westchester Lace's accelerated withdrawal liability is $410,867.00, less any interim payments received by the Fund.  Pl. 56.1 Statement ¶ 32.  Plaintiffs' undisputed 56.1 Statement notes that:

Section 4.4 of the Trust Agreement provides that the Fund shall be entitled to collect interest at the rate of 1 % per month, liquidated damages equal to 20% of the amount owed, plus attorneys' fees and costs of an action to collect amounts due to the Fund, including withdrawal liability.

Pl. 56.1 Statement ¶ 43.

## IV. CONCLUSION

Accordingly, Plaintiffs' motion for summary judgment is affirmed and
Defendants' motion to vacate the arbitration award is denied. Plaintiffs are awarded the
outstanding amount of Westchester Lace's accelerated withdrawal liability, plus interest
calculated at 1% per month, 20% liquidated damages, attorneys' fees and costs. Plaintiffs
will submit a proposed judgment on five days' notice to Defendants.

### IT IS SO ORDERED.

Dated: New York, New York
     July **2** , 2006

Robert P. Patterson, Jr.
U.S.D.J.

Copies of this Opinion and Order sent to:

*Counsel for Plaintiffs*

Schulte Roth & Zabel LLP
Ronald Richman
Julia Spivack
919 Third Ave.
New York, NY 10022
Tel: 212-756-2000
Fax: 212-593-5955

*Counsel for Defendants*

Grotta, Glassman & Hoffman, P.C.
75 Livingston Ave.
Roseland, NJ 07068
Tel: 973-992-4800
Fax: 973-992-9125